UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

AMBROSE FRANCIS,
     Plaintiff,

     v.

No. 13cv359 (SRU)

PATRICK DONAHOE, POSTMASTER
GENERAL and UNITED STATES OF
AMERICA,
     Defendants.

**RULING ON MOTION TO DISMISS**

     Ambrose Francis, a former employee of the United States Post Office, filed this action

against Postmaster General Patrick Donahoe alleging Title VII hostile work environment,

wrongful termination and retaliation claims, as well as common law tort claims for defamation

and intentional infliction of emotional distress.  Upon the Postmaster General's motion, I

substituted the United States of America as the defendant for the purposes of the common law

tort claims.  Now before me is the defendant's motion to dismiss Counts Two (defamation) and

Five (intentional infliction of emotional distress) for lack of subject matter jurisdiction and Count

Three (wrongful termination) for failure to state a claim upon which relief may be granted.  For

the reasons below, the defendant's motion (doc. # 15) is **GRANTED**.

I.    **Standard of Review**

     A.  Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

     Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack

of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional

power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[T]he

court must take all facts alleged in the complaint as true and draw all reasonable inferences in

favor of plaintiff," but "jurisdiction must be shown affirmatively, and that showing is not made

by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l*

*Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citations omitted). The party

who seeks to invoke a court's jurisdiction bears the burden of establishing that jurisdiction.

*Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (citing *Warth v. Seldin*, 422 U.S.

490, 518 (1975)).

B.  Failure to State a Claim Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed

"merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which

might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch*

*Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d

636, 639 (2d Cir. 1980)). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court

must accept the material facts alleged in the complaint as true, draw all reasonable inferences in

favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for

relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555-56 (2007).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the

speculative level," and assert a cause of action with enough heft to show entitlement to relief and

"enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also*

*Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they

must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and

*Iqbal* obligates Francis to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted).  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## II.    Background[1]

Francis worked as a letter carrier with the United States Postal Service (the "USPS") from 2000 to 2012.  Am. Compl. ¶¶ 5, 22 (doc. # 14).  On April 6, 2012, Francis suffered an injury after an incident with a co-worker.  *Id*. ¶¶ 6, 8.  The co-worker chased Francis while calling him names and then pushed a hamper into Francis, which caused Francis to hit his back on a desk.  *Id.* ¶¶ 6, 7.  During and immediately after this altercation, Francis's supervisor failed to respond to Francis's requests for assistance and medical treatment.  *Id.* ¶¶ 7, 9.

On July 18, 2012, Bertha Belington, the USPS's Manager of Customer Services, called Francis into her office for a meeting.  *Id.* ¶ 11.  Francis requested that a union steward be present at the meeting, but Belington denied this request.  *Id*.  Francis alleges that during the meeting, Belington mistakenly accused him of making an inappropriate comment to her, which Francis vehemently denied.  *Id.* ¶¶ 11-12.  Francis again requested a union steward, and left Belington's office when she denied that request.  *Id.* ¶ 12.  Belington then followed Francis and screamed at him, using derogatory language.  *Id.* ¶ 13.  Thereafter, the USPS suspended Francis.  *Id.* ¶ 14.

In response to this allegedly discriminatory treatment, Francis filed a complaint with the Equal Employment Office ("EEO") of the USPS on July 12, 2012 and a Request for EEO

---

[1] Unless otherwise noted, all background information is taken from the Amended Complaint (doc. #14).

Counseling on July 19, 2012.  *Id.* ¶ 19.  The USPS issued a Final Agency Decision on December

11, 2012, concluding that the USPS had not subjected Francis to discriminatory treatment.  *See*

Final Agency Decision (doc. #19-1). [2]  On September 14, 2012, the USPS issued Francis a

Notice of Removal for "Unacceptable Conduct" and violation of the USPS's "Zero Tolerance

Policy."[3]  Am. Compl. Count Three ¶ 22.  On September 27, 2012, the USPS issued Francis a

"Letter of Decision," but the Complaint does not reveal the substantive contents of that letter.  *Id.*

¶ 23.  Francis filed grievances on both actions and an arbitration was held on February 7, 2013.

*See id.* ¶ 24.  The Arbitrator denied the grievances in a decision dated February 18, 2013, which

Francis received on February 27, 2013.  *Id.*  Francis, however, never received a Form 50

officially notifying him of his termination from the USPS.  *Id.* ¶¶ 24-25.  Francis then filed a

second EEO complaint on March 26, 2013, alleging wrongful discharge.  *Id.* ¶ 26.

Francis instituted this action on March 14, 2013, alleging that the USPS and its agents

had discriminated against Francis because of his race (African American), color (black), and

national origin (St. Lucian).  *Id.* ¶¶ 15, 21.

## III.    Discussion

### A.  Defamation

The United States claims that the federal government has not waived its sovereign

immunity for defamation claims and that the court should dismiss this count for lack of subject

matter jurisdiction.  Francis counters that this court has subject matter jurisdiction under 28

---

[2] Francis had 90 days from his receipt of the December 11, 2012 USPS Final Agency Decision to commence this action.  *See* Final Agency Decision 21.  Ninety days from the issuance of that decision would have been March 11, 2013, but Francis did not institute this action until March 14, 2013.  It is unclear, however, when Francis received the decision, and that affects the timeliness of his complaint.  Therefore, any amended complaint filed in response to this ruling should include the date that Francis received the USPS decision in order to ensure that his March 14, 2013 complaint was timely.

[3] Presumably, the "Notice of Removal" signified Francis's termination.  The parties do not dispute that this is the approximate date Francis was terminated.

U.S.C. § 1343(a)(3) or 28 U.S.C. § 1367.  In addition, Francis posits that jurisdiction is proper

because the defamation claim is "reasonably related" to the claims in his EEO complaint, and,

therefore, Francis properly put the United States on notice of the claims against it.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies

from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citation omitted).  Thus, "[i]t is

axiomatic that the United States may not be sued without its consent and that the existence of

consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

Moreover, "waivers of sovereign immunity must be 'unequivocally expressed' in statutory text,

and cannot simply be implied." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004)

(citations omitted).

The Federal Tort Claims Act ("FTCA") is the exclusive remedy "for injury or loss of

property, or personal injury or death arising or resulting from the negligent or wrongful act or

omission of any employee of the Government while acting within the scope of his office or

employment . . . ." 28 U.S.C. § 2679(b)(1).  The FTCA is a "sweeping waiver of sovereign

immunity that, under specified circumstances, renders the Government liable for money damages

for a variety of injuries caused by the negligence of Government employees." *Lanus v. United

States*, 133 S. Ct. 2731, 2732 (2013) (Thomas, J., dissenting from denial of certiorari).  The

FTCA, however, specifically excludes a waiver of sovereign immunity for "[a]ny claim arising

out of . . . libel [or] slander . . . ." 28 U.S.C. § 2680(h).  Thus, the FTCA does not waive

sovereign immunity for defamation claims.  *See, e.g.*, *Schweitzer v. Dep't of Veterans Affairs*,

No. 3:99CV02148, 2001 WL 237195, at *3 (D. Conn. Feb. 21, 2001).

Francis attempts to create an end-run around the FTCA by invoking 28 U.S.C. §§ 1343

and 1367 as alternate bases for bringing a defamation claim.  His arguments fail, however,

because neither statute includes a waiver of sovereign immunity.  *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 542 (2002) (holding § 1367(a) does not waive sovereign immunity for state defendants); *Jachetta v. United States*, 653 F.3d 898, 907-08 (9th Cir. 2011) ("Because we fail to see how this text can be construed as an unequivocally expressed waiver of the government's sovereign immunity, we hold that 28 U.S.C. § 1343(a)(3) does not waive sovereign immunity." (citations omitted)); *Wilkerson v. United States*, 67 F.3d 112, 119 n.13 (5th Cir. 1995) ("Section 1367(a), however, deals only with the federal courts' power to exercise subject matter jurisdiction over certain claims and does not operate as a waiver of the United States sovereign immunity.").

Francis's "reasonably related" and "notice" arguments likewise are insufficient to overcome an immunity defense.  Francis cites to *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002), but that case is inapposite.  Although *Morgan* held that "the incidents constituting a hostile work environment are part of one unlawful employment practice, [for which] the employer may be liable for all acts that are part of this single claim," that holding did not address whether the government had waived its sovereign immunity.  *See id.*  Instead, *Morgan* centered on whether a Title VII plaintiff could file suit based on claims falling outside the statutory period.  *Id.* at 105 (holding discrete acts outside the statutory period could not be included in suit).  Thus, Francis's arguments fall far short of an "unequivocally expressed" statutory waiver of sovereign immunity.  *See Adeleke*, 355 F.3d at 150.

B.  Intentional Infliction of Emotional Distress

The United States moves to dismiss Francis's claim for intentional infliction of emotional distress ("IIED") for failure to exhaust administrative remedies.  Francis avers that he exhausted his administrative remedies by filing a claim with the USPS's EEO and under the Federal

6

Employees' Compensation Act ("FECA") and, subsequent to initiating this lawsuit, a Form 95

with the Unites States Postal Service.  The United States argues that filing a Form 95 subsequent

to filing a complaint in this court is insufficient.

The FTCA does waive sovereign immunity for IIED claims.[4]  Failure to exhaust

administrative remedies under the FTCA, however, is a jurisdictional bar.  *See Adeleke*, 355 F.3d

at 154.  Under 28 U.S.C. § 2675(a):

> An action shall not be instituted upon a claim against the United
> States for money damages for injury or loss of property or personal
> injury or death caused by the negligent or wrongful act or omission
> of any employee of the Government while acting within the scope
> of his office or employment, unless the claimant shall have first
> presented the claim to the appropriate Federal agency and his claim
> shall have been finally denied by the agency in writing and sent by
> certified or registered mail.

A claim is "presented" when a "[f]ederal agency receives from a claimant, his duly authorized

agent or legal representative, an executed Standard Form 95 *or other written notification* of an

incident, *accompanied by a claim for money damages in a sum certain*."  28 C.F.R. § 14.2

(emphasis added).  Thus, it was not necessary for Francis to file a Form 95 prior to initiating this

suit if he had provided the United States the requisite "other written notification."

Nevertheless, Francis has failed to plead facts demonstrating presentment of an

administrative claim for intentional infliction of emotional distress.  *See* 28 U.S.C. § 2675; *In Re*

*Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987); *Altman v. Connally,* 456 F.2d

1114, 1116 (2d Cir. 1972).  Francis does not describe the FECA action in his complaint;

therefore, filing that complaint cannot satisfy the presentment requirement.  Francis did not

---

[4] Of course, to the extent that the plaintiff is claiming IIED as a result of his co-worker "pushing a hamper into" him, there would be no waiver because that injury "aris[es] out of  assault or battery."  *See* 28 U.S.C. § 2680(h); *see also United States v. Shearer*, 473 U.S. 52, 55 (1985) ("We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee."); *Vallo v. United States*, 298 F. Supp. 2d 1231, 1235 (D.N.M. 2003) (denying motion to amend complaint to include IIED claim because "Plaintiff's [impermissible] assault and battery claim encompasses the claim of the proposed IIED, and the allegations that support those claims cannot be separated").

provide the court with his EEO complaint, nor does his complaint in this case state that his EEO

complaint included a claim for a "sum certain."  *See* Am. Compl.  Therefore, Francis has failed

to make an affirmative showing that the EEO complaint meets the presentment requirement

either.  Without more specific pleading or the EEO complaint, it is impossible to determine

whether Francis properly noticed the United States of an IIED claim and included a "claim for

money damages in a sum certain."  Thus, the IIED claim is dismissed without prejudice.

      C.  Wrongful Termination

      The Postmaster General asserts that the court should dismiss Francis's Title VII wrongful

termination claim for failure to exhaust administrative remedies.  The Postmaster General claims

that Francis failed to contact an EEO counselor within the required 45 days after his termination,

on or about September 14, 2012. [5]  Francis does not dispute that his second EEO complaint, filed

March 26, 2013, did not meet the 45 day requirement, but responds that his wrongful termination

claim is reasonably related to his July 2012 EEO complaint for discriminatory harassment.

      Title VII "prohibits employment-related discrimination on the basis of race, color,

religion, sex, or national origin and retaliation against employees who complain about

discrimination."  *Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008).  A plaintiff's failure

to exhaust administrative remedies typically is a time-bar to a Title VII claim unless subsequent

claims are "reasonably related" to the claims within his EEO complaint.  *See id.* at 75.

      A subsequent Title VII claim is "reasonably related" to an EEO claim "where the conduct

complained of would fall within the scope of the [EEO] investigation which can reasonably be

---

[5] The Equal Employment Opportunity Commission ("EEOC") regulations require a federal employee alleging discrimination to "initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ."  29 C.F.R. § 1614.105(a)(1).

expected to grow out of the charge of discrimination."[6]  *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir. 1993), *abrogated by statute on other grounds as stated in Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 693 (2d Cir. 1998).  This is "essentially an allowance of loose pleading."  *Id.*  "This court has treated the requirement that a federal employee bring a complaint to his or her EEO for resolution, *see* 29 C.F.R. § 1614.105, as analogous to the requirement that a private sector employee first bring a complaint to the attention of the [EEOC] for resolution."  *Terry v. Ashcroft*, 336 F.3d 128, 150 (2d Cir. 2003) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001)).

Neither party provided the first EEO complaint, so it is not possible to determine definitively whether Francis's wrongful termination claim is reasonably related to the allegations contained therein.  *See Williams v. New York City Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) (discussing reasonable relationship as "intimately connected to the facts asserted in the EEOC complaint").  Nor is it possible to infer whether the facts alleged in the EEO complaint are reasonably related to Francis's wrongful termination claim based on the Final Agency Decision. The Decision indicates that Francis alleged discrimination on the basis of race, color, and national origin.  Final Agency Decision 1.  Francis's complaint fails to tie his allegations of wrongful termination to specific acts of discrimination on any of those grounds.  Instead, the amended complaint contains conclusory statements, asserting that Francis was wrongfully discharged "due to the discriminatory, harassive, improper, illegal, and retaliatory actions of the defendant" and that he "was summarily discharged and subjected to unchecked retaliation."  Am. Compl. ¶¶ 27-28.  Those assertions fail to meet the plausibility standard set forth in *Twombly* and

---

[6] A claim may also be reasonably related if it is in retaliation for filing an EEO claim or if the new claims are based on incidents carried out in "precisely the same manner" as the conduct alleged in the EEO complaint. *Butts*, 990 F.2d at 1402-03.  As is, the complaint does not contain enough factual allegations to support either form of reasonable relation. It is unclear from the complaint whether the plaintiff is alleging that the wrongful termination was a result of discrimination, retaliation, or both.

*Iqbal*.  *See Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 678-79.  Therefore, the wrongful

termination claim is dismissed without prejudice repleading.[7]

## IV.    Conclusion

The defendants' motion to dismiss (Doc. #15) is **GRANTED** with prejudice with respect to

the defamation claim (Count II), **GRANTED** without prejudice with respect to the wrongful

termination claim (Count III), and **GRANTED** without prejudice with respect to the IIED claim

(Count V).  The plaintiff shall file a further amended complaint within thirty days of this ruling.


It is so ordered.


Dated at Bridgeport, Connecticut, this 31st day of March 2014.



                                        /s/ Stefan R. Underhill
                                        Stefan R. Underhill
                                        United States District Judge

---

[7] Francis should attach his EEO complaint to any future complaint.